UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THADDEUS M. LIETZ,

Plaintiff,

v. Case No. 26-cv-256-pp

BRIAN CAHAK, *et al.*,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), DENYING PLAINTIFF'S MOTION FOR LEAVE TO E-FILE (DKT. NO. 9), DENYING PLAINTIFF'S MOTION FOR STATUS AND SCHEDULING ORDER (DKT. NO. 11) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Thaddeus M. Lietz, who is incarcerated at the Outagamie County Jail and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 3, for leave to e-file, dkt. no. 9, and for status and scheduling order, dkt. no. 9. It also screens the complaint, dkt. no. 1.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 9, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $8.22. Dkt. No. 7. The court received that fee on March 30, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff was incarcerated at Oshkosh Correctional Institution during the events described in the complaint. Dkt. No. 1 at 1. He is suing Warden Brian Cahak, Zach Schroeder and B. Ruesink-Jungers. Id. The plaintiff states that his lawsuit challenges "a disciplinary punishment by Zach Schroeder without a conduct report or a disciplinary hearing as should have occurred pursuant to Wisconsin Administrative Code DOC Chapter 303." Id.

The plaintiff alleges that on October 28, 2025, he was terminated from the Thinking for a Change (T4C) program because he did not meet attendance expectations. Id. at 1-2; Dkt. No. 1-1 at 4-5. The Termination/Discharge Summary states in part: "Thaddeus Lietz was enrolled to T4C and set to start group on 10/17/25. Mr. Leitz failed to attend his first three sessions (10/17/25, 10/24/25, 10/27/25) and was terminated from the program. It is unknown why he did not attend any groups." Dkt. No. 1 at 2; Dkt. No. 1-1 at 4. The plaintiff alleges that after being terminated from the T4C program, Schroeder punished him by removing him from his tutoring job assignment and assigning him to ninety days involuntary unassigned (VUNA) status. Dkt. No. 1 at 1-2; Dkt. No. 1-1 at 6.

The plaintiff claims that Schroeder's actions violated his due process rights under the Fourteenth Amendment because the form the plaintiff signed to participate in the program did not clearly state what program the plaintiff would be participating in and did not state the consequences for not participating. Dkt. No. 1 at 3; Dkt. No. 1-1 at 1-2. The plaintiff states that he did not know the protocol for attending a program at Oshkosh and that it was unfair to punish him. Dkt. No. 1 at 4. He alleges that Schroeder is liable under the Fourteenth Amendment for failing to file a conduct report "in regards to action in which Schroeder believes and/or alleged that [the plaintiff] violated pursuant to Wisconsin Administrative Code §303.67(1) and §303.67(2)."[1] Id. He

---

[1] Wis. Admin. Code DOC §303.67 states in part:

also states that Schroeder violated his due process rights "by executing a punishment of VUNA for ninety-days and terminating [the plaintiff's] institution employment due to termination of a program without giving [the plaintiff] a hearing pursuant to Wisconsin Administrative Codes DOC §303.79 through §303.84." Id. The plaintiff claims that Schroeder violated his rights under the Eighth Amendment by executing a disciplinary punishment under §DOC 303.72(g)[2] without due process. Id. The plaintiff asserts that Schroeder retaliated against him for using the inmate complaint process "by not giving a copy of electronic mail/message as requested numerous times by the plaintiff and complaint examiner then such could be viewed as a First Amendment violation because of hinderance of giving mail, message, and/or open record request to the plaintiff." Id. at 5.

The plaintiff alleges that Ruesink-Jungers has "superior authority" to Schroeder and is liable for allowing a punishment to occur without disciplinary proceedings. Id.; Dkt. No. 1-1 at 15 (Exh. H), 19-20 (Exh. K). He also states

---

> (1) Except as provided under s. DOC 303.66, any employee who observes or becomes aware of a rule violation shall verify that a violation has occurred and shall write a conduct report. If more than one employee knows of the same incident, only one of them shall write a conduct report.
> (2) In the conduct report, the employee shall describe the facts and list the sections of this chapter which were allegedly violated.

[2] Wis. Admin. Code §DOC 303.72(1)(g) provides:

> (1) A major disposition must include one or more of the following and may include one or more of the penalties under s. DOC 303.70:
> …
> (g) Loss of specific privileges for more than 60 calendar days for inmates in the general population.

that he wants to add H. Sampson as a defendant, who is liable for the same reason as Ruesink-Jungers. Dkt. No. 1 at 5; Dkt. No. 1-1 at 18 (Exh. J). The plaintiff asserts that these "institutional complaint examiners purposely and deliberately not only hindered in remedying the situation, but also condoned as well as facilitated Zach Schroeder's action through purposely hindering [the plaintiff's] ability to raise issue to Department of Corrections at Madison, Wisconsin." Dkt. No. 1 at 6.

The plaintiff states that Cahak violated his rights under the Fourteenth and Eighth Amendments because the plaintiff tried to communicate with him numerous times to make him aware of the situation. Id.; Dkt. No. 1-1 at 7 (Exh. E), 21-22 (Exh. L).

For relief, the plaintiff asks that the court expunge the "VUNA" off his record and order Oshkosh to reimburse his tutor job institution pay. Dkt. No. 1 at 6. He also seeks compensatory and punitive damages. Id. at 7-8.

C. Analysis

The plaintiff claims that Schroeder violated his due process rights by punishing him without giving him a conduct report or holding a disciplinary hearing. He asserts that the punishment consisted of terminating his participation in the T4C Program, removing him from his prison job and placing him on VUNA status for ninety days. The plaintiff states that the punishment was unfair because he was terminated from the program for attendance issues, but he didn't know that he had missed any of the classes.

A "prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Lekas v. Briley, 405 F.3d 602, 608 (7th Cir. 2005); see also Marion v. Columbia Correction Inst., 559 F.3d 693, 697 (7th Cir. 2009) ("[D]isciplinary segregation can trigger due process protections depending on the duration and conditions of segregation."). A liberty interest, and therefore due process, under the Fourteenth Amendment is triggered only when a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Being placed on VUNA status and being subject to limitations on use of the law library and telephone do not impose an atypical and significant hardship. See Rowell v. Gozinske, Case No. 08-cv-467, 2008 WL 4159147, at *1–*2 (W.D. Wis. Sept. 4, 2008). Likewise, incarcerated individuals have no liberty interest in prison jobs and no right to work or earn money. See DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000) (Due Process Clause does not afford incarcerated individuals a liberty or property interest in their jobs); see also McGee v. Mayo, 211 Fed. App'x 492, 494 (7th Cir. 2006) (incarcerated individual's cell confinement and work loss did not deprive him of any liberty interest); Madyun v. Thompson, 657 F.2d 868, 874 (7th Cir. 1981) (failure to provide vocational and educational training "does not violate the Constitution in the absence of grievously debilitating prison conditions"). In addition, the

mere fact that education programs are offered does not create a liberty interest in those programs because the removal of the programs would not "impose atypical and significant hardship on a prisoner in relation to ordinary prison life," and therefore would not violate the Due Process Clause of the Fourteenth Amendment. Walker v. Wisconsin Dep't of Corr., No. 25-cv-1770, 2026 WL 1948962, at *4 (E.D. Wis. July 6, 2026) (quoting Jones v. Litscher, Case No. 16-cv-1303, 2017 WL 1323433, at *3 (E.D. Wis. Apr. 10, 2017)).

The plaintiff does not have a liberty interest in his termination from the T4C program, the loss of his job and his placement on VUNA status for ninety days. He has not stated a claim against the defendants for violation of his due process rights.

The plaintiff believes that under the provisions of the Wisconsin Administrative Code, he should have received a conduct report and disciplinary hearing after Schroeder "punished" him. But the plaintiff did not allegedly commit a major rule violation for which he was entitled to a due process hearing. See Wis. Admin. Code §§DOC 303.71, 303.80. Even if Schroeder had violated the Wisconsin Administrative Code by not issuing the plaintiff a conduct report and holding a disciplinary hearing, the plaintiff would not state a claim under 42 U.S.C. §1983. Section 1983 protects against constitutional violations; it does not protect against violations of prison regulations or policies. Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); see Hunter v. Mueske, 73 F.4th 561, 567 & n.1 (7th Cir. 2023) (rejecting argument that violation of prison policy, on its own, violated Eighth Amendment).

The plaintiff references a constitutional conditions-of-confinement claim. The Eighth Amendment can be violated by conditions of confinement in a prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) where prison officials are deliberately indifferent to this state of affairs. Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). The plaintiff does not allege that he was subjected to conditions that deprived him of a basic human need, such as heat, clothing or sanitation. See id. (citing Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006)). He has not stated a claim of unconstitutional conditions of confinement.

The plaintiff alleges that Schroeder retaliated against him for using the inmate complaint process "by not giving a copy of electronic mail/message as requested numerous times by the plaintiff and complaint examiner then such could be viewed as a First Amendment violation because of hinderance of giving mail, message, and/or open record request to the plaintiff." Dkt. No. 1 at 5. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

The plaintiff's allegation that Schroeder retaliated against him is conclusory. He has not alleged that he suffered a deprivation that would likely deter future First Amendment activity nor has he alleged Schroeder took the actions he did because the plaintiff filed an inmate complaint. See Dorsey v. Williams, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022) (plaintiff did not state retaliation claim because he did not explain why he believed his alleged protected activity was the cause of defendants' alleged conduct) (citations omitted). The plaintiff has not stated a retaliation claim.

The plaintiff has not stated a claim for violation of his constitutional rights. He *may* be able to state a claim for retaliation; the court will give him an opportunity to file an amended complaint regarding that claim. The court is enclosing a copy of its amended complaint form. The plaintiff must use this form for his amended complaint. See Civil Local Rule 9(b) (E.D. Wis.). The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the retaliation claim he wishes to bring, and to describe which defendants he believes committed the violations that relate to that claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court or other readers back to facts in the previous complaint.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

## III. Plaintiff's Motions (Dkt. Nos. 9, 11)

On April 27, 2026, the plaintiff filed a motion for e-filing access because he had been released from prison. Dkt. No. 9. Since the plaintiff filed that motion, he has returned to confinement and currently is incarcerated at the Outagamie County Jail. Dkt. No. 10. Electronic filing is not available at the Outagamie County Jail. The court will deny the plaintiff's motion for e-filing access.

On August 14, 2026, the plaintiff filed a motion for status and scheduling order. Dkt. No. 11. This order updates the plaintiff as to the status of the case in that it screens the complaint and gives the plaintiff an opportunity to file an amended complaint. The case is not yet at a procedural stage where the court would issue a scheduling order. The court will deny the plaintiff's motion for status and scheduling order.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DENIES** the plaintiff's motion for leave to e-file. Dkt. No. 9.

The court **DENIES** the plaintiff's motion for status and scheduling conference. Dkt. No. 11.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to receive it by **November 30, 2026**. If the court receives an amended complaint by the end of the day on Monday, November 30, 2026, the court will screen it as required by 28 U.S.C. §1915A. If the court does not receive either an amended complaint or a request for more time to file one by the November 30, 2026 deadline, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$341.78** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Outagamie County Sheriff, who oversees the Outagamie County Jail, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the

[3] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated individuals. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 20th day of October, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**